[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of the marriage of the parties. They were married in Florida on October 20, 1973, and have resided in Connecticut since 2000, although they arrived here about five months apart. Both of their children are now adults.
The husband, now fifty-four, worked principally in farming after his discharge from the Navy shortly before the marriage. When the parties met, he was in a pure-bred hog business with his mother. After the marriage, two significant things happened. First, the wife's parents gave the parties jointly an eighty-acre piece of property, where the parties resided until coming to Connecticut. Secondly, the husband entered into a partnership with the wife's father to farm a nearby tract of nearly one thousand acres owned by the wife's parents. This venture required a significant commitment from Mr. Davison, particularly after the mid-1980s when the wife's father reduced his involvement in the farming operation, but provided the family with its support during the early years of the marriage.
In 1988, nearly fifteen years after the marriage, the parties became involved in a dairy operation located about thirty-five miles from the family farm. The husband was the initiator of this venture and its principal operator, but the wife was part owner of the business and liable for its debts. The operation included the purchase of cattle and equipment but the land on which it was conducted was leased from the dairy's former owner. The first year of the business was very profitable, with earnings of approximately $100,000.00, and the second year was also profitable. By the third year, however, an infection in the cattle severely depleted the profit, and a recurrence of that infection in the fourth year drove the cattle farm into bankruptcy. The parties entered into a plan under the bankruptcy code to make certain payments to the bankruptcy trustee. Two years later, the bankruptcy action was dismissed when the wife failed to file certain forms with the trustee which were her responsibility to file. There were several results of the CT Page 3359 failure. First, the debts, which exceeded $270,000.00, were not discharged. The parties entered into an agreement with the wife's brother-in-law, Alto Straughn, to borrow a substantial portion of the funds needed to settle the debts, the result of which eventually was that they turned over to the brother-in-law as partial repayment a portion of the land they expected to receive from the estate of the wife's parents.[1] The second result of the failure is that the parties' unsecured debt to the wife's parents — $50,000.00 borrowed in 1992 at ten percent interest — was not discharged. The wife still claims that as a liability. The net result is that, even if inadvertent, the wife's neglect ended up benefiting her birth family to the very substantial expense of her marital family.
The parties differ as to fault in causing the breakdown. The husband asserts that the wife's depressed condition contributed to his mounting unhappiness. The wife acknowledges being depressed, but attributes the breakdown to a relationship between the husband and another woman begun after the parties moved to Connecticut. The court finds that the wife's medical condition may have been a factor but that it does not constitute fault, and that the husband's conduct was the chief cause for the dissolution of the marriage. Nevertheless, fault is only one of the factors the court has considered in making its orders.
After the failure of the dairy business, the husband worked for a time for a business owned by his sister while still working the family farm and later took a job with a Curagen facility in Florida. When that plant closed, he accepted the opportunity to move to Connecticut, where he was facilities manager for Curagen's Branford operation. He was laid off from that position on November 7, 2002 as part of a large layoff by the company.
The wife is now retired from her job with the United States Postal Service. The parties' move to Connecticut was only incidental in the wife's decision to take early retirement. The husband is looking for work, nearing the end of his unemployment benefits. He earned nearly $60,000.00 annually at Curagen in Connecticut, and approximately $50,000.00 at Curagen in Florida. Apart from the interlude with the dairy farm, his earnings throughout the marriage were substantially less, and even the wife argues that he should settle for a lesser paying job now to insure some kind of income. The court finds that his earning capacity is $35,000.00.
When the parties left Florida, they liquidated all their land holdings there except for seventy-five of the eighty acres they had received at their wedding. Their house, with five acres carved out from the original CT Page 3360 eighty, was sold for $125,000.00. Eighty acres near their original plot was sold to the husband's brother for $96,000.00. The money was used to complete payments to Mr. Straughn under an agreement that he would forgive the remaining debt on receipt of $20,000.00, to repay the wife's thrift savings plan for sums that had been borrowed from it, to put $60,000.00 into the $235,000.00 purchase of their Connecticut home, and to establish a bank account now essentially depleted. The parties disagree about the value of the Connecticut house, the husband attributing $245,000.00 to it and the wife attributing $295,000.00 to it. The court finds that the house has a value of $265,000.00. They also disagree about the value of the seventy-five acres in Florida. The husband's appraiser testified that the value was $230,000.00, noting that it could probably not be sold at that price in less than six to twelve months, while the wife values it at $140,000.00. Given the price for the house and the terms of the sale to the husband's brother for nearby property, the court finds the wife's valuation more credible, and finds the value of the property to be $140,000.00.
The court has considered the statutory criteria under Connecticut General Statutes, Sections 46b-62, 46b-81, and 46b-82 together with relevant case law and its findings of fact. The court makes the following orders:
1. The marriage of the parties, having broken down irretrievably, is dissolved.
2. The wife is restored to the use of her former name, and shall be known as Judy Simmons.
3. The parties shall attempt to sell the marital residence in North Branford until April 1, 2003 without the services of a realtor. If they are unsuccessful, they shall on that date list the property for sale with a licensed realtor to be chosen by the wife at a figure to be determined by the wife consistent with her testimony as to the value of the house. This order does not preclude a listing higher than that figure if the realtor certifies to both parties a good faith belief based upon current market conditions that a higher price will result in a binding contract to purchase. If no contract at that price is received within forty-five days, the parties shall return to court (court time to be made available on twenty-four hours notice) to have the court determine the further conditions of sale. The court shall retain jurisdiction to enter further orders. (The court heard testimony concerning the valuations by both parties of the value of the house, and has determined the value in making its findings of fact. In making its orders concerning the sale, the court seeks to permit the parties to maximize the value they receive without CT Page 3361 unnecessarily delaying the sale. The court has considered the parties' range of values in making its orders, and is satisfied that a sale within that range (or, indeed, below it, if market conditions at the time of the sale so justify) will not upset the mosaic of its other financial orders.) Upon the sale of the property, the parties shall deduct reasonable costs of sale including conveyance taxes, title expenses, attorneys fees in connection with the closing of title, realtors fees, recording fees, mortgage payouts, and customary adjustments, and shall divide the remaining balance equally.
4. The wife shall hold the husband harmless and indemnify him on account of any debt to her parents, Mr. and Mrs. Simmons, and on account of any debt due or which may become due to her brother-in-law and/or sister, Mr. and Mrs. Straughn, including for principal, interest, fees, penalties, costs and reasonable attorneys fees to defend.
5. Until March 31, 2003, the husband shall continue to make payments to and in behalf of the wife in accordance with the pendente lite orders. Commencing on April 1, 2003, the husband shall pay the wife the sum of $8,000.00 per year, in equal weekly payments of $153.85, as alimony for the remainder of her life, or until his death, whichever shall first occur, based upon the earning capacity found by the court. The term of alimony shall not be modifiable. The husband shall notify the wife, through her attorney, when he has obtained employment, including the name and address of the employer, the nature of the employment, and the terms of his compensation, including salary and bonuses. The notification shall be made within one week of the commencement of employment. On or before March 1 of each year beginning in 2004, he shall provide the wife with all 1099s, W-2s, annualized pay stubs, and other indicia of his earnings.
6. The wife shall have the two payments of $3,500.00 due on the peanut subsidies for October 2003 and 2004.
7. The husband shall keep his 401k, Curagen stock options, New Haven Savings Bank account, and Dodge truck. The wife shall keep her Thrift Savings Plan, bank account, and Jeep Cherokee.
8. The husband shall transfer all of his right, title and interest in and to the seventy-five acres in Florida to the wife, subject to a mortgage from her to him secured by the land in the amount of $50,000.00, which shall be paid on the earliest of the sale of the land, a transfer of the land whether or not for consideration, her death, or five years from the date of judgment. The husband's obligation to transfer title shall not mature until the wife has delivered to him CT Page 3362 evidence of the execution and recording of the mortgage, which shall be done within thirty days. This mortgage is in the nature of support, and shall not be dischargable either as to the debt or as to the lien in any bankruptcy which may be filed by the wife.
9. The motion to have the husband held in contempt for violating the automatic orders by accepting a severance package shall be denied.
10. The husband shall be responsible for the joint credit card debt of the parties after all available insurance payments for medical or prescription charges have been applied against the credit card bills, whether they are received by the wife or the husband.
11. The husband shall be responsible for all medical bills and dental bills incurred by the wife prior to the date of judgment after all available payment by any medical insurance has been applied for by the wife and received by either the wife or the husband.
Judgment shall enter accordingly.
 BY THE COURT, GRUENDEL, J.